# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN DUANE BOWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-158-GKF-PJC |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge Paul J. Cleary on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #22] and the Objections thereto filed by plaintiff, Kevin Duane Bowers ("Bowers"). [Dkt. #23]. The Magistrate Judge recommended the Commissioner's decision be affirmed, finding that (1) the ALJ properly weighed the medical evidence; (2) the ALJ properly evaluated Bowers' credibility; and (3) the ALJ relied on appropriate vocational expert testimony. Bowers objects to all three of the Magistrate Judge's recommended findings.

## I. Procedural History

Bowers filed his applications for disability insurance benefits and supplemental security income benefits on February 7, 2011 and February 23, 2011, respectively. [R. 169-177]. The applications were denied initially and on reconsideration. [R. 97-105, 115-120]. An administrative hearing was held before ALJ David W. Engel on August 8, 2012. [R. 42-90]. By decision dated August 24, 2012, the ALJ found that Bowers was not disabled. [R. 12-28]. On

January 16, 2013, the Appeals Council denied review. [R. 1-5]. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a de novo review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. § 423(d)(3).  "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of her alleged disability.  20 C.F.R. §§ 404.1512(c), 416.912(c).  "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms."  20 C.F.R. §§ 404.1508, 416.908.  The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians.  20 C.F.R. §§ 404.1513(a), 416.913(a).  A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth the five steps in detail).  The claimant bears the burden of proof at steps one through four.  *Williams*, 844 F.2d at 751 n.2.  At step one, a determination is made as to whether the claimant is presently engaged in substantial gainful activity.  *Id.* at 750.  At step two, a determination is made whether the claimant has a medically determinable severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *Id.* at 750-51.  At step three a determination is made whether the impairment is

equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* at 751. If it is, the claimant is entitled to benefits. *Id.* If it is not, the evaluation proceeds to the fourth step, where the claimant must show that the impairment prevents him from performing work he has performed in the past. *Id.* If the claimant is able to perform her previous work, he is not disabled. *Id.* If he is not able to perform his previous work, then the claimant has met her burden of proof, establishing a prima facie case of disability. The evaluation process then proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity ("RFC")[1] to perform other work in the national economy in view of his age, education, and work experience. *Id.* The Commissioner bears the burden at step five, and the claimant is entitled to benefits if the Commissioner cannot establish that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.*

### III. Background

Bowers was born on September 22, 1966 and at the time of the hearing before the ALJ on August 8, 2012, was 45 years old. [R. 42, 49]. He graduated from high school in 1985 and has a bachelor's degree from Oklahoma State University. [R. 50]. He stated that he does not drive but "every once in a while" drives a motorcycle. [*Id.*]. He had not driven a motorcycle since February 2012, when he had a motorcycle accident. [R. 50-51]. He lives in the same house as his parents, in a separate downstairs apartment, and he relies on them for transportation. [R. 51].

Bowers served in the National Guard from 1989 to retirement, with active duty from 1986 to 1989, in 2003 and in 2007-2008. [R. 51-52]. He has a VA disability rating of 60 percent, which includes 30 percent for a cataract issue. [R. 54]. He has a pending claim with the

---

[1] A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. *Williams,* 844 F.2d at 751.

VA for post-traumatic stress disorder ("PTSD"). [R. 55]. He testified that while stationed in Iraq, he witnessed public hangings in downtown Iraq. [R. 57].

Bowers testified he has nightmares every night. [R. 60]. The nightmares interfere with his sleep. [*Id.*] In a given 24-hour period, he gets two to three hours sleep, including "catnaps" during the day. [*Id.*]. He said he is sleepy all the time, and it affects his ability to focus and concentrate on things. [*Id.* 61]. He lays down and tries to sleep and otherwise, "really can't do anything." [*Id.*]. He feels insecure. [*Id.* 62]. He reads on the computer; he doesn't have trouble reading news articles but has to reread parts "all the time." [*Id.*]. He has problems with depression and "feels like I'm . . . going to commit suicide all the time," but does not have a plan to do so. [*Id.* 63].

Bowers rents a private airplane and flies it regularly to keep his rating current. [R. 66]. He always takes someone with him when he flies. [R. 67].

Bowers testified he has problems with hammer toes and it takes him 20 minutes to walk a half mile because he has to take rests. [R. 64]. His feet hurt all the time. [R. 67]. The problem gets worse when he walks. [*Id.*]. The problem started getting worse about September of 2006. [R. 68]. Elevating his feet helps, and he spends six to seven hours a day getting off his feet and elevating them. [R. 68-69].

Bowers testified he has problems with headaches. [R. 69]. He gets them "about every day," and they last "about four or five hours at a time." [*Id.*]. He takes no medication for them, but lies down and shuts his eyes. [*Id.*]. He has been diagnosed with tinnitus, and it interferes with his ability to hear. [R. 70]. He has episodes of dizziness, sweating and feeling sick about once or twice a week. [R. 70-71]. He takes no medication for them. [R. 71]. He vomits every time. [*Id.*].

Bowers had cataract surgery in December of 2008, but testified he still has trouble seeing. [R. 71-72]. He has trouble reading the paper. [R. 72]. However, he can fly a plane. [*Id.*].

Bowers currently smokes electronic cigarettes. [R. 73]. He drinks alcohol but does not do any street drugs. [R. 74]. He takes care of his own day to day chores, cooking and laundry. [*Id.*].

VA records reflect that Bowers was treated for complaints of bad eyesight from 2009 through 2012. [R. 305-310, 369-377, 379-384, 464-466, 570-573, 597-606, 728-731].

On July 27, 2010, Bowers presented to a VA clinic with a complaint of a severe migraine that had been ongoing for 3-4 weeks. [R. 354-68]. Screenings for depression and PTSD were both positive. [R. 361, 362]. Bowers was prescribed diclofenac and methocarbamol. [R. 357]. A CT scan of Bowers' head on August 30, 2010 was unremarkable. [R. 390]. During an appointment with a primary care physician on November 16, 2010, Bowers reported daily headaches lasting 2-3 hours. [R. 335].

Bowers was given a suicide prevention risk assessment screening at the VA by Emmanuel J. Roman, M.D., on November 29, 2011. [R. 589-597]. On Axis I, Dr. Roman assessed major depressive disorder, recurrent with psychotic features, and a note to rule out PTSD. [R 593]. On Axis V, he assessed Bowers' Global Assessment of Functioning ("GAF") as 50. [*Id.*]. He prescribed Sertraline for depression and anxiety and Risperdal for AVH [Auditory Verbal Hallucinations] and paranoia. [*Id.*]

Bowers presented at the VA for an annual exam on December 14, 2011. [R. 455-461]. He complained of "daily all day" headaches. [R. 456]. He reported a head injury from an IED explosion in Iraq in 2008 and another head injury from a motorcycle/truck accident in 2008. [*Id.*]. He stated that he didn't sleep at night due to headaches and "see[ing] things at night,

6

hear[ing] voices." [*Id.*]. His hammer toes "hurt all the time." [*Id.*]. He eats twice a day and vomits each time and has diarrhea after each meal. [*Id.*]. His assessments included major depressive disorder, recurrent, severe, with psychotic features; headache; and cataracts. [R. 456-457].

Bowers returned to the VA for a follow up mental health exam on December 20, 2011. [R. 583-585]. He presented for a comprehensive psychiatric evaluation on December 23, 2011, which was completed by River J. Smith, Ph.D. [R. 576-583]. Dr. Smith made an Axis I diagnosis of major depressive disorder, severe, and PTSD. [R. 582]. On January 5, 2012, he presented for mental health care at the VA and was seen by Dennis Trost, M.D. [R. 573-576]. His Axis I diagnoses were major depressive disorder, severe; and PTSD. [R. 575]. His GAF was assessed as 45-50. [*Id.*]. His medications were adjusted. [*Id.*]. He was seen by a physician's assistant at the VA for follow-up mental health care on February 27, 2012, and his medications were adjusted. [R. 569-570].

In February 2012, Bowers received extensive treatment, including surgery, at the VA Outpatient Clinic, after suffering a third-degree burn to his right inner calf from a motorcycle muffler. [R. 507, 520-537, 541-568, 624-627, 650-690, 694-726, 728]. He reported that on February 25, he was on his motorcycle putting it in a garage when he fell over and was not able to get up and the exhaust system burnt his leg for about 20 minutes. [R. 566-567]. Some bystanders assisted him in removing the motorcycle. [*Id.*]. He stated he had been drinking alcohol. [*Id.*].

Bowers was seen by a psychiatrist, Dr. Dennis Trost, on March 22, 2012. [R. 537-541]. He reported he had quit psychotropic meds in late February after the motorcycle accident. [R. 537]. His Axis I diagnosis was major depressive disorder, severe, and PTSD, with the note

7

"poor control without meds." [R. 539]. His GAF score was 45-50. [R. 540]. He was started on prescription medications again. [*Id.*]. Dr. Trost saw Bowers again on June 22, 2012. [R. 647-650]. The doctor noted Bowers' severe major depressive disorder had improving symptoms; PTSD was still listed as a diagnosis on Axis I and his GAF score was 55. [R. 649].

Agency examining consultant Michael D. Morgan, Psy.D., conducted a mental status evaluation of Bowers on July 20, 2011. [R. 413-418]. Bowers told him that being in the army for 25 years was his most noteworthy type of employment; his problems began to interfere with his ability to work in 2005, and he last worked on September 24, 2009. [R. 413]. Dr. Morgan found that Bowers' legal records were consistent with a history of alcohol dependence. [R. 415]. He found the claimant met the criteria for a recurrent major depressive disorder and PTSD. [*Id.*]. He included those, as well as alcohol dependence, on his Axis I diagnostic impressions, and scored Bowers' GAF as 56-60. [R. 416].

On August 6, 2011, non-examining agency consultant Ron Cummings, Ph.D., completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique Form. [R. 419-436]. On the Psychiatric Review Technique Form, for Listing 12.04 (Affective Disorders), he found Bowers had recurrent, moderate major depressive disorder based on Dr. Morgan's report. [R. 426]. For Listing 12.06 (Anxiety-Related Disorders), he found that Bowers had anxiety evidenced by "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." [R. 428]. For the "Paragraph B Criteria," Dr. Cummings found Bowers had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no episodes of decompensation. [R. 433]. In the "Consultant's Notes" portion of the form, Dr. Cummings summarized Dr. Morgan's report. [R. 435]. He noted that the Third Party ADL's (Activities of Daily Living)

8

completed by Bowers' father on 3/24/11 were "quite limiting in that he described very severe symptoms and concerns about his son's mental health," but the claimant's ADL's were not very limiting and neither was that of Dr. Morgan. [*Id.*].

In the Mental Residual Functional Capacity Assessment, Dr. Cummings found that Bowers had marked limitations in his ability to understand and remember detailed instructions, the ability to carry out detailed instructions and the ability to interact appropriately with the general public. [R. 419-420]. He found that Bowers was able to maintain concentration, persistence and pace for a normal work day and work week; able to understand and carry out simple and some complex work tasks; able to recognize and avoid common work hazards; able to adapt to changes in the work setting and make decisions regarding work tasks; and able to work with coworkers and supervisors on a superficial basis without being overly distracted by psychological symptoms. [R. 421]. He found that Bowers would not be able to work effectively with the general public due to mood instability. [*Id.*]. He found Bowers' report of work limitations due to a mental impairment was not fully supported by the objective evidence in the case, and therefore, his claim was deemed to be only partially credible. [*Id.*].

Agency consultant Bhupinder Walia, M.D. completed a physical examination and report dated April 30, 2011. [R. 399-404]. Bowers reported pain in his lower legs from his knees to his toes and said he was fatigued all the time. [R. 399]. Dr. Walia's physical examination and findings were normal, and his assessment was chronic leg pain. [R. 400-404].

Agency nonexamining consultant Kenneth Wainner, M.D., completed a Physical Residual Functional Capacity Assessment of Bowers on June 14, 2011. [R. 405-412]. He found that Bowers was capable of occasionally lifting up to 50 pounds, frequently lifting up to 25 pounds; standing and/or walking about 6 hours in an 8-hour workday, sitting for about 6 hours in

9

an 8-hour workday, and unlimited pushing and/or pulling, other than as shown for lift and/or carry. [R. 406]. In his narrative explanation, Dr. Wainner briefly summarized Dr. Walia's report. [R. 406-407]. Dr. Wainner found no other limitations. [R. 407-409].

On August 1, 2012, Grant Ward, Ph.D., performed a psychiatric evaluation of Bowers at the request of Bowers' attorneys. [R. 757-771]. Dr. Ward completed an Impairment Questionnaire and a five-page narrative report dated August 7, 2012. [*Id.*]. Bowers described himself as "retired military" since September 2009. [R. 767]. He stated he has "no desire to work and prefers to ride his motorcycle and help his friends with their motorcycles." [*Id.*]. He acknowledged he was willing to perform carpentry work when he is able. [*Id.*]. Bowers reported he earned a bachelor's degree in aviation while in the military, has an active pilot's license and flies a rented plane once a month to keep his ratings current. [*Id.*]. He stated that while on duty in Iraq, he and his team would ride in a Humvee equipped with a large machine gun on top and "mow soldiers down" to rescue fellow troops. [R. 767-768]. He reported that he also had the duty of transporting Iraqi prisoners to be executed by hanging, and had witnessed "a couple 100" prisoners executed, with some being high profile war criminals. [R. 768]. Bowers denied ever receiving a brain injury, but stated he received a concussion from a motorcycle accident in 2009. [R. 769]. He denied any other head injuries and denied any physical injuries from exploding IEDs. [*Id.*]. He reported he receives psychiatric services from the VA in Tulsa; his "shrink" prescribes medications, which he "flushes down the toilet;" and he has requested group therapy but has been unable to receive it. [R. 770]. Dr. Ward concluded:

> Evidence was produced as a result of this examination to fully support the presence of PTSD for Mr. Bowers. His symptoms cause him to have interpersonal dysfunction, and he is thought to be at risk for harming others if he is provoked or intimidated by someone who triggers his re-experiencing symptoms. He has managed to structure his life in a manner to reduce his anxieties, but he continues to be disabled by them. In addition to PTSD, Mr. Bowers is thought to have

10

depressive symptoms. He is not thought to presently meet diagnostic criteria for a major depression, though he may have in the past, and currently be in a state of partial remission. His depressive symptoms include anger, apathy, irritability, insomnia, and occasional suicidal thoughts.

In summary, Mr. Bowers was found to have mental health conditions that impair his ability to interact appropriately with the general public, cause him to experience a great deal of anxiety when he has feelings of loss of control, and make him a risk to the safety of others if his hypervigilance is triggered by their appearance and/or behavior.

[R. 771]. Dr. Ward believed Bowers could manage his own funds. [*Id.*].

On the impairment questionnaire, Dr. Ward indicated that Bowers was "markedly limited" in four areas: ability to work in coordination with or proximity to others without being distracted by them; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. [R. 761-762]. He found Bowers was moderately limited in four areas and mildly limited in four areas. [R. 760-763]. He found no evidence of limitation in eight areas. [*Id.*]. He opined that Bowers was capable of tolerating low-stress work, but was likely not capable of a 40-hour work week, especially if interaction with others was required. [R. 764-765].

### IV. Decision of the ALJ

In his decision, the ALJ found that Bowers met insured status requirements through December 31, 2014. [R. 15]. At Step One, the ALJ found that Bowers had not engaged in any substantial gainful activity since his alleged onset date of September 24, 2009. [*Id.*]. At Step Two, the ALJ found that Bowers had severe impairments of service-connected military disabilities and allied disorders. [*Id.*]. At Step Three, he found that Bowers did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ found that

11

Bowers had the RFC to perform a full range of light and sedentary work. [R. 17]. He found that Bowers could not climb ropes, ladders or scaffolds and was unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery. [*Id.*]. He found that Bowers could understand, remember and carry out simple to moderately detailed instructions in a work-related setting and could interact with co-workers and supervisors under routine supervision. [*Id.*]. At Step Four, the ALJ determined that Bowers had no past relevant work. [R. 26]. At Step Five, the ALJ found there were a significant number of jobs in the national economy that Bowers could perform, taking into account his age, education, work experience and RFC. [R. 26-28]. Therefore, the ALJ found that Bowers was not disabled at any time from September 24, 2009 through the date of his decision. [R. 28].

On appeal, Bowers argues (1) the ALJ failed to properly weigh the reports of Dr. Ward and the agency examining and nonexamining consultants; (2) The ALJ failed to properly evaluate Bowers' credibility; and (3) The ALJ relied on flawed vocational expert testimony. The Magistrate Judge, in his Report and Recommendation, found to the contrary with respect to each of these arguments. Bowers objects to these findings.

### A. Whether the ALJ Properly Weighed the Medical Evidence

As the Magistrate Judge noted, Bower's first argument is limited to the evidence of the mental health examining and nonexamining consultants. The ALJ, in his decision, gave "little weight to the opinion of Dr. Ward, a consultative psychologist, at the request of the claimant's representative." [R. 26]. The ALJ explained:

> It is emphasized that the claimant underwent the examination that formed the basis of [the] opinion in question not in an attempt to seek treatment for the symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, Dr. Ward was presumably paid for the report and opinion. Although such evidence is certainly legitimate and

> deserves due consideration, the context in which it was produced cannot be entirely ignored.

[*Id.*]. In contrast, the ALJ gave "great weight" to the opinions of the agency examining and nonexamining consultants, and concluded that the medical evidence and opinions were consistent with the RFC he had found. He stated, "Further, the state agency physicians, who are experts in assessing the physical and mental limitations that reasonably flow from a medical condition, have concluded the claimant can reasonably be expected to perform at the light exertional level with the non-exertional limitations found by the ALJ." [*Id.*].

The ALJ is required to "consider all evidence in [the] case record when he make[s] a determination or decision whether [claimant is] disabled." 20 C.F.R. § 404.1520(a)(3). "He may not pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). However, "our limited scope of review precludes this court from reweighing the evidence or substituting our judgment for that of the [Commissioner]." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

A non-examining physician's opinion is an acceptable medical source, which the ALJ is entitled to consider. *Id.* (citing 20 C.F.R. § 404.1513(a)(1)). With respect to the issue at hand, generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Bowers complains that the ALJ rejected Dr. Ward's opinion *only* because Dr. Ward evaluated him on referral from his attorney and because the report was paid for, and while the Tenth Circuit has not spoken on this issue, other circuits have held a medical opinion cannot be

13

discounted on the basis that it was obtained at the request of counsel. However, this is not an accurate reading of the ALJ's decision.

Although Dr. Ward's Psychological Report includes the caption, "Techniques: Mental Status Examination, Review of Documentation," the body of the report consists entirely of a recitation of statements Bowers made to Dr. Ward during the interview. [R. 767-771]. There is no reference in the body of the report to *any* other source. Indeed, the ALJ, in his summary of the evidence, observed, "Counsel's retained expert elicited subjective statements from the claimant to support his assertions of PTSD from combat service in Iraq." [R. 22].

The ALJ pointed out numerous inconsistencies between Bowers' statements at the hearing and his statements to health care professionals. For example, at the hearing, Bowers reported serving one tour of duty in Iraq, while he reported to the consultative examiner (Dr. Morgan) that he had served three tours. [R. 18]. At the hearing, he stated that he would "love to work" if only he could, but he told Dr. Ward "<u>he had no desire to work</u>" and stated he would rather go out on his motorcycle and ride with his friends. [R. 19]. He reported he was sleepy all the time, but he "was quite wide awake and alert during his hearing and responsive to all questioning without noticeable problems." [R. 18]. He claimed he has had foot pain from hammertoes for 20 years, but he "was able to remain physically fit to the point of engaging in his alleged combat operations in Iraq in 2007-2008," and "[w]hen asked how is it that his foot condition was good enough to get him his alleged 'combat operations' in Iraq and now suddenly rendered him unable to work in a peacetime environment once he had returned home, he had no good explanation." [R. 18].

In conducting its review of the ALJ's decision, the court "should, indeed must, exercise common sense," and "cannot insist on technical perfection." *Keyes-Zachary*, 695 F.3d at 1166.

14

Where the court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Id.* Here, it is apparent from the ALJ's summary of the evidence that he did not find Bowers' testimony to be credible, and the lack of credibility undermined his confidence in Dr. Ward's report, which appears to have been based entirely on Bowers' own subjective statements to Dr. Ward.[2] Accordingly, the court agrees with the Magistrate Judge that the ALJ did not commit reversible error in giving little weight to Dr. Ward's opinion evidence. *See White v. Barnhart*, 287 F.3d 903, 908-909 (10th Cir. 2001).

### B. Credibility Assessment

The Tenth Circuit has stated:

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quotations and citations omitted). Further, "[t]he ALJ enjoys an institutional advantage in making the type of determination at issue here" because "[n]ot only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *White*, 287 F.3d at 910.

The use of "boilerplate findings" is insufficient to support the ALJ's credibility determination only "in the absence of a more thorough analysis." *Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004).

The court agrees with the Magistrate Judge's finding that although the decision includes some boilerplate findings, the ALJ provided ample reasons supporting his finding as to Bowers'

---

[2] Issues pertaining to credibility of Bowers' testimony are further addressed in § B below.

credibility. In addition to the discrepancies listed in § A above, the ALJ identified the following inconsistencies:

- [Bowers] allegedly witnessed "war criminals" being hung in the streets of Iraq and alleged[ly] witnessed hundreds of Iraqis being publicly hanged during his single tour of duty in 2007-2008 where he served as a vehicle driver, not an active duty military policeman (in the military, prisoners of war are handled exclusively by the military police, not truck drivers or supply specialists as implied in this case). [R. 18].

- He cannot drive because his vision does not allow him to do so [but testified that he can ride his motorcycle regularly, at least up until his motor vehicle accident in February 2012 where he wrecked his bike and apparently does not have one now to ride]. He also testified that he flies a small plane at least once a month to maintain his small pilot's license [freely admitting that his testimony was that he could not drive a car, but could ride a motorcycle and fly a plane. He had no suitable explanation for this inconsistency and no explanation of [how] he could possibly meet the Federal Aviation Administration (FAA) vision requirements if he cannot see as he alleges. [R. 19].

- During a follow-up visit to the VA clinic December 20, 2011, he reported he suffered two traumatic brain injuries, the first from an IED explosion in Iraq and the second after his return home, in a motorcycle/truck accident [R. 584], but the ALJ noted "the assertion of an IED injury in Iraq has been shown false by VA records." [R. 21].

- In his visit with Dr. Ward, he denied ever receiving a brain injury, but stated he received a concussion from a motorcycle accident in 2009, "not consistent with his assertion of traumatic brain injury in Iraq as he alleged earlier," he denied any other head injuries and "[h]e denied any physical injuries from exploding IEDs." [R. 22].

The ALJ may properly consider inconsistencies between the claimant's hearing testimony and information he provided to the agency and/or medical professionals. *See Harris v. Astrue*, 2012 WL 3893128, at *4 (10th Cir. 2012) (citing SSR 96-7p, 1996 WL 374186, at *5)

The court concurs with the Magistrate Judge's conclusion that the ALJ made a credibility assessment that was supported by substantial evidence and that complied with legal requirements.

### C. Limitations Related to Paragraph B Criteria

Bowers contends the ALJ committed reversible error when he failed to include all limitations found by the mental health physicians in his RFC. Dr. Cummings, in his residual functional capacity assessment, found that Bowers had marked limitation in his ability to interact appropriately with the general public. [R. 420-421]. Bowers is correct that the ALJ failed to include this limitation in his RFC. [R. 17]. The ALJ is not allowed to include some limitations found by consultants in his RFC and to omit other limitations without explanation. *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). However, the omission was harmless, as the ALJ included the limitation in the hypothetical he posed to the vocational expert, stating, "Assume interaction with the general public only occasionally," and the jobs identified by the vocational expert did not require frequent interaction with the public, [R. 81-83].[3]

Bowers also contends that the ALJ's RFC and hypothetical to the vocational expert failed to include his Paragraph B Criteria findings of "moderate" difficulties in social functioning and in concentration, persistence or pace. The Tenth Circuit has rejected Bowers' argument that Paragraph B Criteria findings must be included in the RFC. *See Lull v. Colvin*, 535 Fed. Appx. 683, 685-86 (10th Cir. 2013) (rejecting plaintiff's argument that the paragraph B criteria should have been included in the RFC and explaining the difference between the mental RFC assessment form, which is used at steps 4 and 5 of the sequential evaluation process, and the Psychiatric Review Technique, paragraphs B and C, which is used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process).

---

[3] The vocational expert identified the following jobs: bagger, DOT 582.687-010, 1991 WL 684303; racker, DOT 524.687-018, 1991 WL 674400; table worker, DOT 739.687-181, 1991 WL 680217; final assembler, DOT 713.687-018, 1991 WL 679271; and screw-eye assembler, DOT 737.687-122, 1991 WL 680071.

## V. Conclusion

For the reasons set forth above, Bowers' Objection to the Magistrate Judge's Report and Recommendation [Dkt. #23] is overruled, the Magistrate Judge's Report and Recommendation [Dkt. #22] is adopted, and the decision of the Commissioner is affirmed.

ENTERED this 3rd day of July, 2014.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT